FILED & ENTERED

OCT 13 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte       DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>Andrea Steinmann Downs<br><br><br><br>Debtor(s). | Case No.: 8:16-bk-12589-SC<br><br>CHAPTER 7<br><br>**MEMORANDUM OPINION REGARDING REVERSAL AND REMAND OF ORDER AWARDING SANCTIONS AND DENYING SANCTIONS AGAINST LORA STEINMANN**<br><br>Date:      September 29, 2021<br>Time:      11:00 AM<br>Courtroom:  5C – virtual |

      In response to the order from the United States District Court filed on the docket on July 27, 2021 [Dk. 1132] ("District Court Order"), vacating the entire sanction award issued on April 17, 2020 ("Sanctions Award") [Dk. 848] in favor of Creditors Hausman Holdings, LLC and David and Pamela Moellenhoff ("Creditors") and remanding the matter to this Court "to consider whether or not sanctions are still appropriate, and if so,

what the proper amount of that award should be,"[1] this Court held a hearing on September 29, 2021.[2] Appearances are as noted in the record. As further set forth below, at the September 29, 2021, hearing, the parties discussed the scope of this Court's review in light of the District Court's directive and the multiple potential approaches which could govern the review.

Having considered the District Court Order, the pleadings filed by the parties, the argument of counsel at the hearing, the docket as a whole, in both the Main Case and the Adversary Proceeding,[3] and for the reasons set forth below, the Court hereby DENIES Creditors' request for sanctions as it is unwarranted under every potential approach analyzed by this Court.

## A. General Case Posture[4]

On June 19, 2016, Andrea Steinmann Downs ("Debtor") filed her Chapter 11 bankruptcy petition. [Main Case Dk. 1]. The case was subsequently converted to a case

---

[1] The District Court twice vacated and remanded the Sanctions Award in a matter of three months, and in its second order, dated June 2, 2021, which reversed and remanded the Sanctions Order, it vacated the entire award "in light of the case's current posture" and "REMAND[ED] to the bankruptcy court to consider whether or not sanctions are still appropriate, and if so, what the proper amount of that award should be." [Dk. 1132; *See also* Dk. 1077].

[2] This case was randomly transferred to this Court on July 31, 2020, based on the retirement of Judge Bauer [*See* Dk. 931], whose order is the subject of this instant proceeding and the District Court's Order Vacating and Remanding the same. Judge Bauer is hereinafter referred to as the prior or predecessor judge.

[3] Case number 16-bk-12589 is the Main Case number of this Chapter 7 bankruptcy and here throughout shall be referred to as the "Main Case." References to any matter contained within the docket for the Main Case shall be referred to as "Dk. ___" or "Main Case Dk. ___." References to any matter contained within the docket for the adversary proceeding number 18-ap-01168 shall be referred to as "Adv. Dk.___" and the adversary proceeding, itself, shall be referred to as the "Adversary Proceeding."

[4] The current case posture is, in a nutshell, the following: (1) the case is administratively insolvent; (2) the Estate is holding approximately $90,000, of which $50,000 has been earmarked or reserved for unsecured creditors pursuant to the $250,000 loan motion [Main Case Dk. 841] presented to, and approved on April 7, 2020 by the predecessor judge from the Intervening Creditors to encourage and support prosecution of the Adversary Proceeding that was later determined in favor of the Former Defendants as a matter of law; (3) it appears that there are no other assets to administer in this case; (4) two Motions for Sanctions under both Rule 11 and the inherent authority of this Court with respect to that litigation are pending [*See* Adv. Dks. 216 & 324], with a briefing and hearing schedule now in place for the determination of amounts of sanctions to be awarded to the Former Defendants and against Plaintiff and Creditors by this Court; and (5) the present reversal and remand order of the District Court is based on the prior judge's failure to provide any basis of or articulation for what sanctions amounts should be awarded to Creditors.

under Chapter 7 of Title 11, United States Code, on September 7, 2017. [Main Case Dk. 292].

The duly appointed (now former) Chapter 7 Trustee, Thomas H. Casey,[5] initiated an adversary proceeding on September 6, 2018, against Debtor's two senior citizen parents and nine adult siblings (collectively, the "Former Defendants"), but not Debtor.[6] [Adv. Dk. 1]. Eventually, on September 17, 2019, Creditors, moved to intervene in the Adversary Proceeding, which motion was granted on December 11, 2019. [Adv. Dk. 145].

The Adversary Proceeding ultimately resulted in a Judgment on the Pleadings in favor of the Former Defendants based on a motion by Defendants Lora Rae Steinmann, Heinz H. Steinmann, and Eric Steinmann, filed on October 14, 2020 [Adv. Dk. 262] and joined by the remaining defendants on October 14, 2020 [Adv. Dk. 264]. The Memorandum Decision on Judgment on the Pleadings in favor of the Former Defendants, which was not appealed by any party and is now final, was entered on November 17, 2020 [Adv. Dk. 300] ("MOD").[7]

Two pending motions for sanctions have been brought by the Former Defendants against the former Trustee, and his counsels, and Creditors, and their counsels, based on (1) Federal Rules of Civil Procedure (FRCP) 11 as made applicable under FRCP 9011, and (2) the Bankruptcy Court's inherent authority to sanction are pending before this Court. [Adv. Dks. 316 and 324].[8]

Now, the Trustee, the original plaintiff in the Adversary Proceeding, has resigned

---

[5] Mr. Casey is hereinafter referred to as the "Trustee." For an avoidance of doubt, all references to the Trustee shall refer to Mr. Casey unless otherwise specifically noted.

[6] Specifically, the Trustee filed the Adversary Proceeding against eleven defendants, Lora Steinmann, Heinz H. Steinmann, Eric Steinmann, Mary (Sypkens) Steinmann, John Steinmann, Tessie (Stapleton) Steinmann, Katy (Belknap) Steinmann, Heinz Steinmann, Jeff Steinmann, Tom Steinmann, and Susie (Wilson) Steinmann. [Adv. Dk. 1].

[7] The MOD is incorporated into and made part of this decision, in response to the District Court's instructions vis-à-vis the present posture of the case.

[8] The ongoing Rule 11 and Inherent Authority Sanctions pleadings and hearing transcripts presently (and perhaps only temporarily) have been sealed by request of the responding parties to those proceedings; nonetheless, *in camera* review may be achieved (if applicable) pursuant to FRBP 8009(f).

from the case [Main Case Dk. 1137], has renounced and disclaimed any fees and

commissions owed to him [Main Case Dk. 1146], and a new Chapter 7 Trustee, Robert

Whitmore (the "Successor Trustee"), has been appointed by the United States Trustee

[Main Case Dk. 1145].

### B. Debtor's Mother's 2004 Exam

The history of this particular situation requires clarification and discussion.

Despite the existence of the (now-concluded) Adversary Proceeding between the former

Trustee on behalf of the Estate and the eleven Former Defendants,[9] the Trustee brought

a motion in the Main Case for a 2004 examination of Debtor's parents, Lora and Heinz

Steinmann (individually, "Debtors Mother" and "Debtor's Father" and collectively,

"Debtor's Parents,") on January 15, 2019.[10] [Main Case Dk. 502]. The Trustee's motion

also sought to subpoena documents from Debtor's Parents regarding Debtor's assets,

including any potential interests held in Debtor's Parents' family trust. *Id.*

Persons not involved with the particularized bankruptcy practice regarding

discovery in main bankruptcy cases and separate adversary proceedings need to be

familiarized with the general overarching process that has been in place throughout the

country for over forty years. Federal Rule of Bankruptcy Procedure (FRBP) Rule 2004

allows parties in interest (especially bankruptcy trustees and others) to conduct general

"fishing expedition"-type inquiries of parties, both previously joined in the proceeding

and outside third parties, in order to discover assets, liabilities, improper transfers, and

other important information related to the administration of a bankruptcy estate. *Rigby*

*v. Mastro (In re Mastro)*, 585 B.R. 587, 597 (B.A.P. 9th Cir. 2018). The Rule 2004

examination is broad in scope, not as limited to discovery under the Federal Rules of

Civil Procedure used in litigation and contested matters in bankruptcy practice. But,

similar protections are afforded to examinees in Rule 2004 Examinations. *Id.* ("We

---

[9] Creditors had not yet intervened in the Adversary Proceeding.

[10] In his motion, the Trustee claimed Debtor held an interest in assets controlled by her parents, and that they possessed information about Debtor's financial affairs. [Main Case Dk. 502].

acknowledge that Rule 2004 is not without limits. It should not be used 'to abuse or harass . . .' *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); *cf.* Fed. R. Bankr. P. 9011(b)(1). Nor should it 'stray into matters which are not relevant to the basic inquiry.' *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984).").

If a Rule 2004 examination target is already a party to the bankruptcy proceeding, only an **entered order** properly served, and no subpoena, is necessary for an appearance or document request.[11] On the other hand, if the target of the Rule 2004 examination is a third party, the due process rights of third parties are protected by jurisdiction being obtained by the issuance of an order and a FRCP 45 subpoena. *Stipp v. CML-NV One, LLC (In re Plise)*, 506 B.R. 870, 877-78 (B.A.P. 9th Cir. 2014).

Another important feature of Rule 2004 is that (at least in the Central District of California) the applicant seeking court approval to conduct a Rule 2004 examination must certify that no adversary proceeding or contested matter is presently pending whereby the applicant can utilize the more restricted and controlling discovery procedures. It is a "well recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004." *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); *see also In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ("Courts are wary of attempts to utilize Fed. R. Bankr. P. 2004 to avoid the restrictions of the Fed. R. Civ. P. in the context of adversary proceedings."); *In re Valley Forge Assocs.*, 109 B.R. 669, 675 (Bankr. E.D. Pa. 1990) ("Many courts have expressed distaste for efforts of parties to utilize [Rule] 2004 examinations to circumvent the restrictions of the [Federal Rules of Civil Procedure] in the context of adversary proceedings or contested matters.").

There may be exceptions to this rule; however, issuance of such an order when an adversary proceeding exists, and is related, is quite uncommon. This feature and process

---

[11] As discussed below, there are limited exceptions, not applicable here, to the requirement that an order be "entered." But, in the case of a Rule 2004 Examination, an order must at least be served – thus, it has to be in writing and it must be actually served.

provides various protections to both the applicant and the target of the discovery, as well as avoids confusion.

To overcome the hurdle presented by the then-pending Adversary Proceeding, the Trustee argued to the prior judge that most of the information requested to be produced in Debtor's Parents' 2004 examination remained unrelated to the Adversary Proceeding, and any overlap was not duplicative because discovery had not yet commenced in the Adversary Proceeding. [Main Case Dk. 502]. In his motion for a 2004 examination, the Trustee asserted that "[c]ourts commonly grant motions under Bankruptcy Rule 2004 even when the subject matters overlap tangentially with a pending adversary matter. In such cases, the 'pending proceeding' rule, which requires a party to conduct discovery under Bankruptcy Rules 7026 through 7037 instead of under Bankruptcy Rule 2004, does not apply. [...] Indeed, Bankruptcy Rule 2004 does not contain any exception that precludes discovery even when such discovery is available in other pending litigation." *Id.* at pg. 3:11–17 (internal citations omitted). The Trustee's assertion was misleading; it is hokum.[12] In fact, such a situation is not common, but rather is largely frowned upon. *See Enron Corp.*, 281 B.R. at 840 (Bankr. S.D.N.Y. 2002); *Bennett*, 203 B.R. at 28 (Bankr. N.D.N.Y. 1996); *In re Valley Forge Assocs.*, 109 B.R. at 675 (Bankr. E.D. Pa. 1990).[13] This Court surmises that this approach is

---

[12] "Our response to this preposterous position is simply this: **Hokum**." *Pollock v. Superior Court*, 229 Cal. App. 3d 26, 29, 279 Cal. Rptr. 634, 635, 1991 Cal. APP. LEXIS 347, *3, 91 Cal. Daily Op. Service 2567, 91 Daily Journal DAR 4005; "To argue that using officers who have already worked a shift constitutes adequate staffing is **hokum**. *City of Santa Ana v. Santa Ana Police Benevolent Ass'n*, 207 Cal. App. 3d 1568, 1573, 255 Cal. Rptr. 688, 691, 1989 Cal. App. LEXIS 191, *10; "The district court found this argument to be **"hokum"** and an improper attempt to insert a limitation not in the claims." *Celsis in Vitro, Inc. v. CellzDirect, Inc.,* 664 F.3d 922, 926, 2012 U.S. App. LEXIS 372, *8, 101 U.S.P.Q.2D (BNA) 1153, 1156, 2012 WL 34381; "Martin pleads that the Court should contact a prison guard by the name of "Taco" at the Baraga Correctional Facility, who Martin alleges will confirm that Martin bewitched him with magic, causing Taco to suffer illness. (Docs. 127 at 2, 130 at 2-3). While witchcraft is **hokum**, Martin nevertheless clearly believes in it, and in his own power to harm others with magic." *Martin v. Kazulkina*, 2017 U.S. Dist. LEXIS 35482, *30-31.

[13] This Court notes that even the two cases cited by the Trustee in his motion for 2004 examination support the contention that, contrary to the Trustee's assertions, discovery pursuant the FRCP is preferable to a Rule 2004 exam where there is pending litigation under which FRCP discovery may be alternatively sought. *See In re Matter of M4 Enters., Inc.*, 190 B.R. 471, 475 (Bankr. N.D. Ga. 1995) (emphasis added) ("Thus, in the case of contested matters such as that before the Court, *the Federal Rules of Civil Procedure offer the preferable default*, from which the Court may deviate at its discretion."); *see*

disfavored in at least in part because of the confusion and misapprehensions it creates, particularly when it comes to the question of which devices are used to compel compliance with orders under Rule 2004 and the FRCP, a problem displayed here.[14]

Debtor's Parents opposed the Trustee's motion for Rule 2004 examination, noting that the Trustee failed to explain why the requested examination could not proceed by discovery in the Adversary Proceeding, as is the preferred course of action pursuant to most case law, and emphasizing the burden placed upon Debtor's elderly parents if they were forced to travel over 80 miles from their home for 2004 examinations; Debtor's Father had previously been deemed incapable of being examined when, prior to the bankruptcy, Creditors sought to depose him and his doctor believed sitting for a deposition would adversely impact his health, and Debtor's Mother had her own health concerns[15] while bearing responsibility for the care for her husband, both of which made such travel overly burdensome. [Main Case Dk. 509]. Further, Debtor's Mother **had already had her 2004 examination conducted in this bankruptcy case by Creditors**, [Main Case Dks. 211, 244, and 509], a point that was also underscored in Debtor's Parents' motion for protective orders with respect to the Trustee's motion for 2004 examinations.[16] [Main Case Dk. 546]. In short, Debtor's

---

*also In re Int'l Fibercom*, 283 B.R. 290, 293 (Bankr. D. Ariz. 2002) which case is also wholly distinguishable from the case at bar ("Here, discovery is not presently available in any of the other pending litigation, due to the automatic stay arising from PF.Net's bankruptcy case.").

[14] For instance, when a non-party (third) party is ordered to appear for a 2004 examination, a subpoena must be issued and served under FRCP 45. If the third party fails to appear, the court cannot sanction the third party at that time. The court must issue an Order Compelling Attendance, and only after that third party fails to appear, and after separate hearing, can the court sanction the third party contemptor. Was Debtor's Mother a third party for purposes of the Rule 2004 examination? Was a subpoena required? Did combining FRCP discovery with the Rule 2004 examination somehow eliminate this requirement? These issues are the mainstay for not confusing and intermingling the two discovery processes. It leads to almost certain unnecessary motions practice and outlandish legal expenses.

[15] At the hearing on the 2004 exam motion, Debtor's Mother's counsel emphasized to the predecessor Court that she had recently had multiple knee replacement surgeries and was at serious risk for deep venous blood clots. Her doctors advised that she was not to sit for more than 30 minutes at a time. [February 26, 2019 Hearing, Main Case Dk. 727, Pg. 27:21 – 28:3].

[16] The arguments in the motion for a protective order were largely the same as those raised in Debtor's Parents' opposition to the motion for Rule 2004 examination. They argued the 2004 examination would be burdensome because of the extensive travel involved, Debtor's Father's Parkinson's diagnosis, and

Parents sought prohibition of the requested 2004 examinations for both of them, but noted that if the Court permitted a 2004 exam of Debtor's Mother (over Debtor's Parent's objections), the Trustee should be barred from asking questions already asked and answered in Debtor's Mother's prior 2004 examination and that the exam should take place in a location close to her home. [Main Case Dk. 546].

Creditors, having not yet intervened in the Adversary Proceeding,[17] did not file their own renewed motion for Rule 2004 examination[18] (which would have been the proper procedure – and the Bankruptcy Court could have consolidated the Rule 2004 Examination Motions), but instead filed a "Joinder" to the Trustee's motion for a Rule 2004 examination, requesting court authority to attend and participate in the 2004 examinations and a court order for Debtor's Parents to produce all documents to Creditors in addition to the Trustee. [19] [Main Case Dk. 517]. [20]

On February 26, 2019,[21] the predecessor court held a hearing on, *inter alia*, the

---

Debtor's Mother's predisposition to deep venous blood clots. [Main Case Dk. 546]. Debtor's Parents also pointed out the information sought could be obtained directly from Debtor, and the 2004 examinations would be improper because they seek information related to the Adversary Proceeding. *Id.* The Trustee, joined by Creditors, opposed Debtor's Parents' motion for a protective order. [Main Case Dks. 554 and 560]. In his opposition, the Trustee claimed he offered to consolidate the Adversary Proceeding depositions with the 2004 exams, but Debtor's Parents never responded. He also argued the requested examinations did not violate the "pending proceeding rule," because "[t]he mere fact that there is pending litigation against a person sought to be examined under Rule 2004 and possible use of such testimony in collateral litigation is not a sufficient reason for denying the examination. *In re Coffee Cupboard, Inc.,* 128 B.R. 509, 516 (Bankr. E.D.N.Y. 1991)." [Main Case Dk. 554.] Debtors Parents replied to the Trustee's opposition to the motion for a protective order. [Main Case Dk. 561].

[17] At the February 26, 2019, hearing, counsel for Debtor's Parents reminded the predecessor judge that Creditors were not a party to the Adversary Proceeding. [February 26, 2019 Hearing, Main Case Dk. 727, Pg. 23:23 – 24:4].

[18] Creditors had previously filed a motion for issuance of a subpoena to Debtor's Mother for a Rule 2004 Examination, which was approved by the predecessor Court almost two years earlier on May 25, 2017. [Main Case Dk. 244].

[19] Creditors claimed the use of joinder was to avoid duplicative discovery. [Main Case Dk. 517]. However, this is certainly a casual and improper use of Joinder. A separate Motion for Rule 2004 Examination should have been required and utilized.

[20] The Trustee filed a reply to Debtor's Parents' opposition to the motion for 2004 examinations. [Main Case Dk. 563].

[21] A review of this transcript indicates that, at the commencement of the hearing, the predecessor court called multiple matters, took appearances on all matters, and commenced arguments, seemingly blending

Trustee's Motion for Rule 2004 Examinations, Debtor's Parents' motion for protective

order, and motions for stay pending an interlocutory appeal on the denial of the Former

Defendants' motions to dismiss the Adversary Proceeding. The prior judge granted the

Rule 2004 Examination Motions and denied Debtor's Parents' motion for a protective

order.[22] And, while the corresponding docket entries for these hearings, dated February

26, 2019, [Main Case Dks. 575 and 576] reflected general hearing results, they also

indicated "order by attorney"; however, **no order was entered on any aspect of the**

**Trustee's motion for a 2004 examination of Debtor's Mother,** or denying the

examination for Debtor's Father,[23] **until after** a September 3, 2019 examination[24] of

---

arguments and discussions across several matters. This transcript also evidences Creditors' use of inflammatory rhetorical argument, where Creditor appears to conflate prior activities by other parties with Debtor's Mother:

Creditors' counsel: "...but notwithstanding for two years, two-and-a-half years into this thing, two OSC's, two sanctions orders, and we still don't have the documents. And this stay is not about anything else, other than a desire not to produce documents. It is about nothing else other than a desire to avoid transparency, which has been a theme in this case, unfortunately... Your Honor, I understand people were minding their own business and got dragged into a lawsuit, but this is the ripple effect of a strategy that was masterminded two, three years ago, and these are the consequences of the decisions that were made. They don't want to be here. We didn't want to be here. We didn't want to get ripped off. We didn't want to spend millions of dollars chasing 750 grand either. So, to stand here and argue about irreparable harm, public interest, innocent bystanders, when you look at the procedural history of this case, when you look at what everyone has gone through, what everyone has been put through, there is no basis for granting this motion. We need to get these documents. There needs to be some degree of accountability, some degree of transparency." [Main Case Dk. 727, Pg. 18:1–19:3].

The Trustee: "They -- it's really been a struggle, your Honor, just to get some basic 2004's." [Main Case Dk. 727, Pg. 29:25–30:1].

The predecessor judge: "...there have been problems with documentation for a long, long time. And I feel like people are doing it again. We don't want to be transparent." [Main Case Dk. 727, Pg. 42:20–23]. "I want discovery to take place on some level. And if you're not going to cooperate, maybe I appoint somebody to step in and deal with it, because this has been going on for way too long. How's that?" [Main Case Dk. 727, Pg. 42:24–43:6]; "And I'm cautioning you, I want discovery, 2004's to go forward in good faith. And anymore games, I'm going to be a very unhappy camper." [Main Case Dk. 727, Pg. 43:13–16].

[22] The record reflects that the motion for protective order was denied at the February 26, 2019, hearing "as moot," because the protections sought by the motion (i.e., time limits, location, no examination for Debtor's Father) would be included in the order granting the motion for 2004 exam. [February 26, 2019 Hearing, Main Case Dk. 727, Pg. 63:19–64:16].

[23] Debtor's Father was not to be examined, and Debtor's Mother's examination was not to exceed 4 hours excluding breaks which were to be given at minimum every 30 minutes. [Main Case Dk. 634, 712].

[24] This is the Rule 2004 examination that is the subject of the Sanctions Award [Main Case Dk. 848], which has now been reversed and remanded by the District Court.

Debtor's Mother took place, and over seven months *after* the hearing on the motion.

Even then, there is doubt that the order was ever served.

### C. Motion to Compel, Sanctions Award, and Subsequent Appeal

Not unsurprisingly (as there was no entered order to guide the parties),

disagreements amongst the parties during the September 3, 2019 examination

resulted,[25] and on November 26, 2019, Creditors moved to compel Debtor's Mother's

testimony, simultaneously seeking sanctions, contempt, and attorneys' fees and

expenses under FRCP 37.[26] [Main Case Dk. 736]. A joint stipulation addressed several

issues raised by this motion.[27] [Main Case Dk. 737].

First, Debtor's Mother's counsel instructed her not to answer any questions asked

by Creditors' counsel. *Id.* Creditors were of the position that, despite the lack of

procedural formalities (i.e., issuance of subpoena), Creditors' joinder in the Trustee's

2004 motion which requested authority to attend and participate in the examination put

Debtor's Parents on notice that Creditors intended to ask questions. *Id.*[28] Creditors

claimed to have exhausted time and incurred significant expense and argued that

Debtor's Mother at least should have allowed Creditors to proceed with their questions

and subsequently brought a motion to strike. *Id.* The Trustee further asserted that when

---

[25] It is also unclear whether any subpoenas were issued or served pursuant to FRCP 45 on Debtor's Mother, or whether they were necessary because of her participation in pending litigation; however, this Court finds that this question is not required to be answered, since she appeared at the 2004 examination in Wrightwood, California with counsel for the Trustee and Creditors present.

[26] Creditors' counsel filed a supplemental declaration detailing attorneys' fees and expenses incurred several months later. [Main Case Dk. 767].

[27] On November 26, 2019, the Trustee also filed a motion requesting the court compel the testimony of Debtor's Mother. [Main Case Dk. 738]. Debtor's Mother filed an opposition to both Creditors' and the Trustee's motions to compel. [Main Case Dk. 745]. Creditors and the Trustee filed replies. [Main Case Dks. 748 and 749]. These documents address generally the same arguments explained below.

[28] Creditors also note that the Order granting the Rule 2004 Exam included reference to Creditors [Main Case Dk. 737]; however, as noted throughout this opinion, that order was not entered until after the September 3 examination of Debtor's Mother. Further, as a point of clarification, this Court notes that neither the order, nor the parties at the hearing, expressly stated that Creditors would be permitted to ask questions of Debtor's Mother at the examination. [Main Case Dk. 712 and February 26, 2019 Hearing, Dk. 727].

the three parties spoke about scheduling the examination, he had indicated Creditors

would ask questions. *Id*. Debtor's Mother asserted that the instant examination was the

Trustee's 2004 exam combined with the Trustee's deposition in the pending Adversary

Proceeding, and that Creditors had no standing to ask questions regarding the

Adversary Proceeding (until they successfully intervened),[29] and that regardless of

Creditors' improper joinder, Creditors needed to file a subpoena to give Debtor's Mother

notice of their participation in the 2004 exam, which they did not do.[30] *Id*.

Debtor's Mother's counsel also instructed her not to answer the Trustee's

questions regarding assets in Debtor's Parents' family trust and value thereof. *Id*. The

Trustee and Creditors contend they had the right to ask questions about the trust

because the Trustee sought to identify all of Debtor's assets, including any assets that

were improperly transferred away from Debtor and should be recovered for the Estate,

as alleged in the Adversary Proceeding.[31] *Id*. The Trustee and Creditors further claim

Debtor's Mother's counsel objected to most of these questions on the basis of relevancy

or privacy (not attorney-client privilege) in violation of FRCP 30 (c)(2), which provides

"a person may instruct a deponent not to answer only when necessary to preserve a

privilege, to enforcement a limitation ordered by the court, or to present a motion under

Rule 30(d)(3)." *Id*. Debtor's Mother asserted that her interests in the assets were

protected by a pre-judgment financial privacy privilege well-recognized in California

and federal law. *Id*. Debtor's Mother further asserted that Debtor held no property

[29] Creditors moved to intervene in the Adversary Proceeding on September 17, 2019 – two weeks after the September 3, 2019, Rule 2004 exam. [Adv. Dk. 122]. The motion was granted on December 11, 2019. [Adv. Dk. 145].

[30] Debtor's Mother also pointed out she was previously examined by Creditors in connection with the state court proceeding against Debtor. [Main Case Dk. 737]. The state court action resulted in verdicts finding Debtor (and Debtor's alter ego, Happenstance) liable for three separate species of intentional fraud with malice, oppression, or fraud, and collectively awarding Creditors $900,000 in compensatory damages, and $280,000 in punitive damages. [Main Case Dk. 736]. Debtor's Mother was not involved in that litigation.

[31] As this Court noted in its MOD, Debtor's Parents reserved the right to divest Debtor of her mere expectancy interest, which is not considered property under California law and therefore not an asset of the estate under federal law, in the fully **revocable** living trust for any reason while Debtor's Parents are both alive. [Adv. Dk. 303].

rights in the trust due to its revocable nature, and so the Trustee's inquiries about the trust fell outside the intended scope of the examination. *Id.*

Third, Debtor's Mother asserted various objections to (1) questions related to what steps she undertook to locate and provide responsive documents, and who may have such documents, and (2) document production related to the value of assets contained in and interests held in Debtor's Parents' family trust, or any trust Debtor's Mother established for her children, or payments or transfers made to or for the benefit of Debtor. *Id.* Again, the Trustee and Creditors generally argued that the Trustee had a right to identify and pursue all potential assets of the Estate and that the foregoing was highly relevant to the Trustee's pursuit. Further, Creditor argued that a relevancy objection was not an appropriate basis for refusing to answer or produce documents. *Id.* On the other hand, Debtor's Mother asserted that her assets were beyond the scope of the examination, as Debtor had no interest in the property, and on that basis, she was not obligated to disclose the information sought. *Id.*

The predecessor judge held a hearing on the motions to compel on December 17, 2019.[32] At that hearing, the predecessor judge advised that Debtor's Mother should have answered certain of the requests (i.e., documents related to payments or transactions made to or for the benefit of Debtor, and steps taken to collect the documents that were requested), but acknowledged that "[m]aybe some of these others are a little overbroad about, you know, what all is in the trust. But those two questions, those should have been answered." [December 17, 2019 Hearing, Main Case Dk. 760, Pg. 27:25–28:8].

---

[32] There exists evidence in this hearing of the prior judge's bias against Debtor's Mother, which seems to be improperly transferred from her animus towards Debtor or Debtor's brother. [*See, e.g.,* Main Case Dk. 760 at 15:18–19] ("I'm just tired, ..., of these people [the Former Defendants]. I'm really tired."); *Id.* at 19:14–17 ("Regardless, I'm not buying it. I want [Debtor's brother] here in this courtroom, with or without documents. But if he comes without documents, he will be coming back with documents, even if I have to send the marshals out for him."); *Id.* at 19:20–23 ("I don't buy it. I don't buy it. This family's stonewalling. [Debtor's brother] is the lynchpin. And like I said, I will report him to the State Bar if this goes any further. I don't believe him."); *Id.* at 60:16–19 ("But wouldn't it be interesting if I get [Debtor's brother] on the stand and he says things that we turn -- we figure out are untruthful somehow. I mean, penalty of perjury, I think that means you lose your Bar license."); *Id.* at 63:4–6 ("[W]e went out of our way to be accommodating to her, and it didn't work. So, I'm done with -- I'm kind of done with [Debtor's Mother].").

Additionally, the predecessor judge acknowledged that there were financial privacy issues and informed the parties of her willingness to allow certain responses to be filed under seal. [December 17, 2019 Hearing, Main Case Dk. 760, Pg. 54:9–12]. Nonetheless, the predecessor judge indicated that Creditors' counsel was "entitled to compensation for going up the mountain for nothing" and invited a declaration regarding costs and fees to be filed. [December 17, 2019 Hearing, Main Case Dk. 760, Pg. 68:13-21]. The predecessor judge took both matters under advisement.

Ultimately, the predecessor judge issued an order on January 8, 2020, regarding the Trustee's motion to compel, which approved the Trustee *and Creditors'* continued examination of Debtor's Mother, ordered Debtor's Mother to answer questions and provide documents, and required the Trustee to lodge an order consistent with the court's order. [Main Case Dk. 759]. It appears that no order was ever entered regarding the motion to compel, specifically.

On January 22, 2020, Creditors filed a supplemental declaration in support of an award of sanctions regarding their motion to compel, in which they sought $107,959.22 in attorneys' fees and costs, and where Creditors state that the predecessor court had indicated it would grant the motion and award sanctions. [Main Case Dk. 767]. On March 4, 2020, Creditors filed a notice of hearing regarding their request. [Main Case Dk. 788]. Debtor's Mother filed an opposition arguing that her positions with respect to the discovery dispute were "substantially justified" under FRCP 37(a)(5), and so the court must not order the award of sanctions.[33] [Main Case Dk. 794].

On March 19, 2020, the Trustee's order on his motion to compel was entered. That order, for the first time, stated that "sanctions are to be awarded as against

---

[33] In the alternative, Debtor's Mother argued that: "In any event, if the Court is inclined to still award any compensation (after entering the January 8, 2020, memorandum decision that failed to impose any such compensation), the maximum amount should be limited to the costs of traveling to and from Wrightwood and not for the full $5,000 in block-billed time for preparing for, attending, and conferring with Trustee's counsel during the examination." [Main Case Dk. 794].

[Debtor's Mother] in an amount to be determined by further order of the Court." [Main Case Dk. 816].[34]

On March 31, 2020, a hearing was held on the matter of whether sanctions should be awarded in connection with Creditors' motion to compel. After hearing the arguments of counsel, monetary sanctions were awarded in favor of Creditors and against Debtor's Mother in the amount of Sixty-Two Thousand One Hundred Seventy-Two and 86/100 Dollars ($62,172.86), with the Sanctions Award entered on April 17, 2018. [Main Case Dk. 848]. On July 31, 2020, upon the predecessor judge's unexpected retirement, the case was randomly reassigned to Judge Scott C. Clarkson.

Debtor's Mother appealed the Sanctions Award,[35] and on March 26, 2021, the District Court vacated and remanded the Sanctions Award after finding that the amount awarded represented an abuse of discretion because many of Creditors' hours were unrelated to the motion to compel **and the predecessor court failed to explain how it arrived at its fee award.** [Main Case Dk. 1077]. The District Court also indicated that it might have found otherwise on the issuance, in the first instance.[36]

On April 2, 2021, this Court set a hearing for determination of the reasonableness of the attorneys' fees to be held on June 16, 2021. [Main Case Dk. 1080]. On May 11, 2021, Creditors requested that the Court postpone that hearing pending their motion for rehearing[37] filed in District Court on April 9, 2021, and set to be heard on May 24, 2021.

---

[34] As noted by Debtor's Mother's counsel: "That was an order that was lodged two months after the memorandum decision, without a copy being provided to us pursuant to a notice of lodgment. So, we never even had an opportunity to respond to the form of that order…" [March 31, 2020 Hearing, Main Case Dk. 851, Pg. 17:8–13].

[35] Debtor's Mother first appealed the Sanctions Award on May 1, 2020 (prior to the predecessor judge's retirement and the random reassignment of this case to Judge Clarkson). [Main Case Dk. 860]. That appeal was dismissed as interlocutory on July 21, 2020. [Dk. 926]. Debtor's Mother appealed again, filing the instant appeal on December 1, 2020. [Dk. 986].

[36] The District Court may have concluded differently on the issue of whether privacy concerns were substantially justified, a complete defense to an award of sanctions. [Main Case Dk. 1077. Pg. 7 of 10].

[37] This Court notes that the District Court characterizes Creditors' motion for rehearing as a "motion for reconsideration." [Main Dk. 1132]. It appears that the two terms are utilized interchangeably; however, for the purposes of this opinion, this Court will utilize "rehearing" rather than "reconsideration."

[Main Case Dk. 1089]. Accordingly, this Court continued its remand hearing to August 4, 2021. [Main Case Dk. 1094]. On June 2, 2021, the District Court entered its order denying Creditors' motion for rehearing. [Main Case Dk. 1132]. In its order denying Creditor's motion for rehearing, the District Court, again vacated and remanded the entire order awarding attorney's fees, this time ordering this Court to determine if sanctions were appropriate "in light of the case's current posture." [Main Case Dk. 1132].[38]

On July 21, 2021, Creditors requested another continuation of this Court's remand hearing. [Main Case Dk. 1129]. This Court continued the hearing to September 29, 2021, [Main Case Dk. 1130], and issued an order requiring supplemental briefing, supported by admissible evidence, on the issue of whether or not sanctions were appropriate. [Main Case Dk. 1149].

### D. Discussion[39]

In its second order, dated June 2, 2021, which reversed and remanded the Sanctions Award, the District Court vacated the entire award "in light of the case's current posture" and "REMAND[ED] to the bankruptcy court to consider whether or not sanctions are still appropriate, and if so, what the proper amount of that award should be." [Main Case Dk. 1132]. Accordingly, this Court interprets the District Court's June 2

---

[38] The District Court wrote: "At bottom, the bankruptcy court abused its discretion when it awarded attorney's fees without *any* explanation for why it awarded the amount it did. The (District) Court's prior Order therefore stands. And, in light of the case's current posture, the Court **VACATES** the entire award and **REMANDS** to the bankruptcy court to consider whether or not sanctions are still appropriate, and if so, what the proper amount of that award should be." [Main Case Dk. 1132, Pg. 3 of 4] (emphasis in original).

[39] For sake of clarity, this Court understands the standard of review that would be exercised by a reviewing court of this Order. "We review a bankruptcy court's award of sanctions for civil contempt under an abuse of discretion standard. *See S&C Home Loans, Inc. v. Farr (In re Farr)*, 278 B.R. 171, 175 (9th Cir. BAP 2002); *Miller v. Cardinale (In re Deville)*, 280 B.R. 483, 492 (9th Cir. BAP 2002), aff'd, 361 F.3d 539 (9th Cir. 2004). A bankruptcy court abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 405, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990). Otherwise, to reverse for abuse of discretion we must have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached. *SEC v. Coldicutt*, 258 F.3d 939, 941 (9th Cir. 2001)." *Stasz v. Gonzalez (In re Stasz)*, 387 B.R. 271, 274 (9th Cir. BAP, 2008).

Order as both vacating the Sanctions Award in its entirety AND requiring the

reconsideration of the award of sanctions in the first instance.

Finding that the language of the District Court Order is not the model of clarity

with respect to the record upon which this Court may rely,[40] the Court has analyzed the

issuance of sanctions utilizing different approaches – all of which result in the same

conclusion, as further explained below.[41]

### a. Reconsideration based on the Limited Record Available as it existed at the time of the final hearing on the Sanctions Award (i.e., March 31, 2020)

The Court first reconsiders the Sanctions Award based on the limited record as it

existed at the time of the final hearing on the Sanctions Award (i.e., March 31, 2020).

Having evaluated the facts and circumstances of this case, through March 31, 2020 only,

and reviewed the arguments presented to the Court at that time, this Court finds that no

sanctions should be awarded to Creditors.

While it may have been reasonable, in the first instance, for the parties to assume

that Creditors would participate in the Rule 2004 Exam by way of its improperly filed

joinder, the opposite position was likewise reasonable. Moreover, it was the

cumbersome, impractical, and imprecise process used by the Trustee and Creditors

(who had not yet intervened at the time of examination) and approved by the

predecessor court to obtain the September 3, 2019 examination of Debtor's Mother that

is the root cause for the present circumstances and disputes precipitating this motion

for sanctions. Had the common procedures of requiring Creditors to file (or renew) their

---

[40] At the September 29, 2021 hearing, the Court provided each party the opportunity to discuss the language of the District Court orders. Each party provided different interpretations of the record upon which this Court may rely. [Main Case Dk. 1171, Pg. 9:10-12:13]. Accordingly, this Court has analyzed the question before it pursuant to the interpretations of each party.

[41] Still another approach may be to reconsider based on the limited record available at the time of the final hearing on the Sanctions Award (i.e., March 31, 2020) while taking into account recently filed pleadings related to the Sanctions Award and the District Court orders vacating and remanding the Sanctions Award, but without considering the remainder of the record. Even that approach leads this Court to ascertain that no sanctions should be awarded, for all of the reasons stated herein.

own motion for Rule 2004 examination been utilized, separate and apart from the

Trustee's Rule 2004 motion for examination, these issues would have been avoided

entirely. The predecessor court could have consolidated them, entertained and

discussed limitations regarding the examinations of the differently situated parties (i.e.,

the Trustee v. Creditors), and likely eliminated much of the confusion which led to the

motion to compel in the first instance.

Additionally, this Court considers that the predecessor judge only allowed a total

of four hours for Debtor's Mother's examination, where breaks were ordered to be

permitted after every thirty minutes. It seems unreasonable to believe that between the

Trustee and Creditors there would be time for both to conduct separate Rule 2004

examinations, particularly given the litigious environment enveloping these parties. If,

as was discussed by the Trustee at the February 26, 2019, hearing, the parties were to

reach some kind of an agreement combining the Trustee's 2004 Examination with a

deposition in the Adversary Proceeding (which ultimately appears to have occurred),[42]

this further adds to the question of whether Creditors were reasonably expected to

participate.

An examination of the excerpts of the transcript of that September 3, 2019

examination [Main Case Dk. 737], provides this Court with sufficient evidence and

reason to appreciate the confusion and unresolved misunderstandings about the

examination. To spotlight the situation, the predecessor judge **never issued an Order

that could be reviewed at the time of the September 3, 2019 examination.**[43]

Either way, on September 3, 2019, there was **no order** in existence that any party could

refer to for guidance on the scope and procedures for this cumbersome and almost

improper (under the circumstances) consolidation of a Rule 2004 Examination and

---

[42] [Main Case Dk. 737].

[43] It is the typical practice in the Bankruptcy Court for the Central District of California for prevailing
parties seeking orders on almost every matter to submit their orders through lodgment to the court within
seven (7) days; thus, this Court infers that neither the Trustee nor Creditors submitted an order, or else
the predecessor judge negligently failed to enter a lodged order.

litigation discovery under the Federal Rules of Civil Procedure. *This situation is a classic example of why these two discovery processes should never be combined. Debtor's Mother's counsel had every reason to be confused and his responses and instructions to his client should have been afforded dignity and appreciation, if not agreement. Going back to court for clarification was proper; demanding sanctions was not.*

Creditors moved for sanctions against Debtor's Mother (a non-party to the bankruptcy) under FRCP Rule 37(b). However, it appears that awarding sanctions under FRCP 37 may be improper as a matter of law, according to the Ninth Circuit B.A.P.:

> Civil Rule 37 applies to motions to compel production only from a "party" under Civil Rule 34, incorporated by Rule 7034, which in turn provides that motions to compel production from nonparties are governed by Civil Rule 45. *See* Civil Rule 34(c).

> Because Stipp is a nonparty, the bankruptcy court could not resort to the enforcement remedies under Civil Rule 37 for noncompliance with a subpoena. *Pennwalt*, 708 F.2d at 494 n.4 (sanctions under Civil Rule 37 do not apply to nonparty's failure to produce documents); *Scruggs v. Vance*, 2012 U.S. Dist. LEXIS 15625, 2012 WL 423486, at *1 (E.D. Cal. Feb. 8, 2012); *In re Nicole Energy Servs.*, Inc., 356 B.R. 786; Pereira, 1997 U.S. Dist. LEXIS 17652, 1997 WL 698186, at *5 (nonparty's failure to obey a court order directing their attendance at a Rule 2004 examination cannot subject them to Civil Rule 37 sanctions); *In re Consol. Meridian Funds*, 2013 Bankr. LEXIS 1421, 2013 WL 1501636, at *10 n.14; *In re Sciaba*, 334 B.R. at 526. The only authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a nonparty for failure to comply with a subpoena duces tecum is Civil Rule 45(e), applicable here through Rule 9016. *Pennwalt*, 708 F.2d at 494 (applying former Civil Rule 45(f) and citing *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1341 (8th Cir. 1975)); *In re Exxon Valdez*, 142 F.R.D. 380, 385 (D.D.C. 1992) (denying petitioner's request for attorney's fees under Civil Rule 37 for respondent's alleged bad faith in not complying with subpoena and holding that the only sanction available is one for contempt under Civil Rule 45, which did not apply because nonparty timely objected to the subpoena); *In re Scruggs*, 2012 U.S. Dist. LEXIS 15625, 2012 WL 423486, at *1; *In re Nicole Energy Servs., Inc.*, 356 B.R. 786; *In re Sciaba*, 334 B.R. at 526. Hence, the only way CML could seek sanctions against Stipp for noncompliance with the subpoenas was to seek to hold him in contempt of court. However, even this has its limitations.

> Under Civil Rule 45(e), a court may hold in contempt a person who fails "without adequate excuse" to obey a subpoena. A nonparty served with a subpoena has three options: it may (1) comply with the subpoena, (2) serve an objection on the requesting party in accordance with Civil Rule 45(c)(2)(B), or (3) move to quash or modify the subpoena in accordance with Civil Rule 45(c)(3). See *In re Consol.*

*Meridian Funds*, 2013 Bankr. LEXIS 1421, 2013 WL 1501636, at \*10. Here, Stipp timely served Written Objections to the subpoenas in accordance with Civil Rule 45(c)(2)(B). This qualifies as an "adequate excuse." *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 930 (N.D. Ill. 2010). See also *In re Exxon Valdez*, 142 F.R.D. at 385. Having raised timely objections to the subpoenas, Stipp was not required to produce documents, or even search for them, until CML obtained an order directing compliance. *Pennwalt*, 708 F.2d at 494 & n.5 (although a subpoena itself is a court order and noncompliance may warrant contempt sanctions, once a nonparty objects, the provisions of Civil Rule 45(c) come into play, and the party seeking discovery must obtain a court order directing compliance); *DeGeer*, 755 F. Supp. 2d at 930 (same).

*Stipp v. CML-NV One, LLC (In re Plise)*, 506 B.R. 870, 877-78 (B.A.P. 9th Cir. 2014).

While Creditors did reference Rule 45 in their motion to compel, they appear to have relied solely on FRCP 37 for the award of reasonable attorney's fees and expenses.[44] [Main Case Dk. 736, Pg. 30:8–31:2]. Notwithstanding the foregoing, the Court conducts its analysis of both contempt sanctions under FRCP 45 and sanctions under FRCP 37 herein – and determines that in both circumstances, and for the same reasons, an award of sanctions should be denied.

FRCP 37 (applicable here through FRBP 9014(c) and 7037) allows a trial court to impose sanctions when a party fails to obey a **discovery order**. Fed. R. Civ. P. 37(b)(2)(A) (emphasis added). Rule 37(b)(2)(A) states, "If a party . . . fails to obey **an order** to provide or permit discovery, including **an order** under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." *See Mkhitaryan v. United States Bank, N.A.,* 2013 U.S. Dist. LEXIS 106447, \*14, 2013 WL 3943630 (emphasis added). Rule 37(b)(2)(A) permits sanctions against a party who "fails to obey **an order** to provide or permit discovery." *Vecron Exim Ltd. v. Stokes*, 2018 U.S. Dist. LEXIS 136582, \*7 (emphasis added). To impose sanctions against a non-debtor party, the bankruptcy court must first issue an **order** compelling compliance with the subpoena or **order** for Rule 2004 examination and the non-debtor party must

---

[44] And no wonder – no subpoena under FRCP 45 was issued.

then fail to comply with the order. *See Stipp v. CML-NV One, LLC (In re Plise)*, 506 B.R. 870, 879 (B.A.P. 9th Cir. 2014).

Like many issues that have arisen in the case due to certain neglect and failures of process throughout, the failure of the Trustee or Creditors to ask the predecessor court to enter a written order on the Rule 2004 examination until 7 months after the hearing held on February 26, 2019, and then after the September 3, 2019 examination starting the present sanctions dispute, requires review. The order was eventually entered on September 16, 2019. [Main Case Dk. 712].

A survey of the cases, both reported and unreported, demonstrates that FRCP 58 (aka the "Separate Judgment Rule") becomes salient when an "oral" order from the bench is presented, but no written order has followed, in matters of the timing of Notices of Appeal.

The Ninth Circuit has opined that oral orders are entitled to the same force and effect as an order reduced to writing. *Noli v. CIR*, 860 F.2d 1521, 1525 (9th Cir. 1988). It must be clear and without doubt that the Court intended its order from the bench to be the controlling order, as opposed to a written order. The Ninth Circuit has also taught that one should look at the nature of the prejudice to the parties in these circumstances. *See Harris v. McCarthy*, 790 F.2d 753 (9th Cir. 1986). Here, the prejudice was encountered by all three parties, the Trustee, the Creditors, and the examinee, Debtor's Mother, because of the lack of clarity and precision in this instance. There was no precisely written court direction available to the parties on the question of who was entitled to ask questions or the scope of the questions presented to Debtor's Mother and objected to by Debtor's Mother's counsel during the examination.

Precision, or lack thereof, of an oral ruling is also an important feature of the Ninth Circuit's decision in *Yourish v. California Amplifier*, 191 F.3d 983 (9th Cir. 1999). Discussing the essence of an oral minute order issued by a District Court (which was noted on the clerk's docket), the court noted:

> [W]e have addressed the closely analogous issue of whether or not particular formalities are necessary in order for a court's discovery order to serve as the

1

2    basis of Rule 37(b)(2) sanctions for a party's noncompliance with a court's
     discovery order. In *Henry v. Sneiders*, 490 F.2d 315 (9th Cir. 1974), a district
3    court entered a default judgment against a defendant after she refused to produce
     records that were ordered produced by the district judge. On appeal, we affirmed
4    the default judgment as a Rule 37(b)(2) sanction for noncompliance with a court
     order. In a claim that was similar to Plaintiffs' claim in the current appeal, the
5    plaintiff argued that "since default under Fed. R. Civ. P. 37(b)(2) is permitted
     only for refusal to comply with a court order for discovery, . . . default was
6    improper." *Henry*, 490 F.2d at 318. We rejected this argument even though the
     district court had not issued a written order directing the defendant to produce
7    the records. We affirmed the default judgment, notwithstanding the absence of a
     written order, because "it [was] clear from an examination of the oral
8    proceedings . . . that the district court had orally ordered appellant to produce the
     records" and "where oral proceedings unequivocally give a litigant notice that
9    certain documents are to be produced, the absence of a written order does not
     preclude the entry of a default judgment for failure to comply." *Id*. (emphasis
10   added). We feel that Henry's reasoning is equally applicable in this case. Just as
     an oral order is an "order," the noncompliance with which justifies Rule 37(b)(2)
11   sanctions, Judge Marshall's minute order was an "order," the disobedience of
     which justified dismissal under Rule 41(b).
12

13

14   *Yourish v. California Amplifier*, 191 F.3d 983, 987 (Ninth Circuit 1999).

15       In this present case, this Court reviews the record of the February 26, 2019,

16   hearing on the motion for Rule 2004 examination, and notes that the predecessor judge

17   instructed the Trustee to upload an order [Main Case Dk. 727, Pg. 60], and further that

18   no docket entry was made by the Clerk revealing the full requirements and scope of the

19   oral order. However, the docket reflects that while the motion for an examination by the

20   Trustee was granted, an order was required to be submitted. Despite the "Joinder" filed

21   by Creditors, there was no reference to Creditors at all. [Main Case Dk. 575]. The

22   "unequivocal" notice giving rise to this discovery dispute that the Ninth Circuit would

23   have the parties possess is simply not present. The lack of a written and entered court

24   order in this case prior to the examination of Debtor's Mother on September 3, 2019,

25   resulting in a failure to provide unequivocal direction to the parties, compels this Court

26   in its discretion to deny sanctions, even if the sanctions were warranted on other

27   grounds (which this Court ascertains there are not).

28

As noted by the Ninth Circuit in *Castner v. First Nat'l Bank,* 278 F.2d 376, 380 (9th Cir. 1960) there is no abuse of discretion in reconsidering a prior judge's order when the current judge is firmly convinced that an error of law had been committed. This Court is firmly convinced that the entry of the Sanctions Award, where there was no order upon which a motion to compel sanctions could have been obtained, or order granting Creditors' motion to compel prior to an award of sanctions, is an error of law.

Even if the Court could conclude that lack of a written and entered order is not fatal to forming the legal basis for the motion to compel, sanctions should not be awarded. FRCP 45 has exempted sanctions when there is an adequate excuse for non-compliance, just as FRCP 37 exempts sanctions if there is substantial justification or other circumstances making the award of expenses unjust. In fact, FRCP 37(a)(5)(A)(ii) provides that a court "must" not order payment of expenses if "other circumstances make an award of expenses unjust."

It is unjust in these procedurally abnormal circumstances to award sanctions against Debtor's Mother, whose actions were excusable. The above narrative demonstrates the frailty of a hodge-podge[45] approach to discovery in a bankruptcy proceeding setting. A thorough and thoughtful approach to discovery should have been initiated at the beginning to alleviate the troubles encountered by all of the parties to this situation.

Further, despite Creditors' attempts to portray otherwise,[46] there is nothing in the record to indicate that Debtor's Mother, specifically, had a history of making

---

[45] Also known as: a heterogeneous mixture.

[46] A review of the March 31, 2020, transcript indicates that Creditor's counsel continued to conflate the actions of Debtor's Mother in connection with the present issue with his frustrations to the family members generally.

Creditors' counsel: "Your Honor, **this family, starting with the Debtor**, has ignored court orders, has done whatever it has chosen to do. This Court has previously issued two sanctions orders against [the Debtor]. Not a dollar of it has been paid.... The fees associated with what **this family** has put the creditors through, and, in fact, the Trustee and this estate, in connection with this deposition and this document production, far exceeds what's in my declaration, because the Trustee went through the same thing with his counsel, and Pepper Hamilton went through the same process as my co-counsel. So, by their actions, it created a lot more problems. They caused a lot more fees to be incurred, **which is**

baseless objections or otherwise flying in the face of any order from the Court. Rather there appears to be one isolated incident of non-compliance, or partial non-compliance, on her part: the very non-compliance complained of in the motion to compel at issue, and for which she was ultimately afforded privacy protections. After being afforded an opportunity to be heard by the predecessor court regarding the motion to compel, Debtor's Mother immediately complied with the predecessor court's order by filing the requested documents under seal.[47] Thus, under the record before the predecessor court at the May 31, 2020 hearing, there was sufficient evidence to demonstrate that the circumstances of awarding sanctions would be unjust. Fed. R. Civ. P. 37(a)(5)(A)(iii).

Additionally, FRCP 37(a)(5)(A)(ii) provides that a court "must" not order payment of expenses if "the opposing party's nondisclosure, response, or objection was substantially justified." The arguments made in first instance,[48] and which this Court now analyzes fully, included the following:

      1.    <u>The Lack of Notice and Scope of Examination by Creditors.</u>

**This Court agrees**. LBR 2004-1 requires proper notice. A FRCP 45 subpoena, as provided for under the statute would suffice; a mere "Joinder" to the Trustee's Motion would have been insufficient to inform Debtor's Mother of the extent of Creditors' participation. This is particularly the case where, as here, Debtor's Mother was not a party to the underlying bankruptcy case.

      2.    <u>The Lack of an Entered Order (Rule 2004 or Otherwise) that Debtor's Mother Violated.</u>

**This Court agrees.** There was no order requiring Debtor's Mother to appear and she cannot be held in contempt for violating an order that didn't exist.

---

***exactly what they want to do***, but, most importantly, every single one of these actions is also in violation of this Court's prior rulings. This (indiscernible) is sanctionable here, and defeats (sic) what must be sanctioned here." [March 31, 2020 Hearing, Main Case Dk. 851, Pgs.6:4–7:15] (emphasis added).

[47] Ironically, it is Creditors who later violated the Court's order to preserve information under seal by publicly filing private material obtained from the Debtor's Parents.

[48] No record from the predecessor court indicates that the foregoing were considered (or dismissed).

3. <u>Debtor's Mother's Reasonable Belief in Her Right to Financial Privacy Given California Law.</u>

**This Court agrees.**[49] The California privacy protections, as stated clearly and concisely within Debtor's Mother's opposition to the Creditor's motion to compel filed on December 3, 2019 [Main Case, Dk. 745] (and which are adopted and incorporated in full herein), justify Debtor's Mother's counsel's objections and instructions not to answer provided to his client at the September 3, 2019, Rule 2004 examination.

4. <u>Debtor's Mother's Reasonable Reliance on Established California Estate and Trust Law that a Trustor of a Fully Revocable Trust Has No Duty to the Beneficiary (or Estate) to Disclose or Account for Trust Assets.</u>

**This Court agrees, for the reasons more fully explained in the MOD (which rationale is adopted and incorporated in full herein).**

5. <u>Lack of Relevance of Her Financial Information to Debtor's Financial Affairs, Which Defined the Scope of the Examination that Creditor's Allegedly "Joined."</u>

**This Court agrees.** While Rule 2004 allows broad examination, such an exam is not intended to be a fishing expedition of a third party's assets. The scope of a Rule 2004 exam should not "stray into matters which are not relevant to the basic inquiry… [such as] matters having no relationship to the debtor's affairs and no effect on the administration of his estate." *In re Mitchell*, No. 18-40736-JMM, 2019 Bankr. LEXIS 658, at *16-17 (Bankr. D. Idaho Mar. 5, 2019) (internal citations omitted). Therefore, the scope of Debtor's Mother's Rule 2004 examination should not have included information about her trust or assets, as those assets did not have any nexus with the

---

[49] At the December 17, 2019, hearing, the predecessor judge acknowledged that there may be reasonable privacy issues, when she stated that she was "willing to let things be filed under seal, if need be. I don't like doing that, but because there are ***financial privacy issues***, I'm willing to do that." [December 17, 2019 Hearing, Main Case Dk. 760, Pg. 54:9–12] (emphasis added).

estate at the time of the examination.[50] Debtor's Mother's objections and her counsel's instructions not to answer, were legitimate and justifiable.

For the foregoing reasons, this Court concludes that on the record before the Court, as of the March 31, 2020 hearing, there was sufficient evidence to demonstrate that Debtor's Mother's failure to provide responses at the September 3, 2019, Rule 2004 examination was substantially justified. FRCP 37(a)(5)(A)(ii). Accordingly, the Court may not award sanctions.

Likewise, for all of the reasons explained above, the Court also concludes that on the record before it, Debtor's Mother presented "adequate excuse" for her non-compliance with the court's then-only verbal order to participate in an improperly noticed 2004 examination. Fed. R. Civ. P. 45(g).

Accordingly, the Court sees no grounds upon which sanctions are warranted.

### b. Reconsideration Utilizing the Entire Record Before the Court

The Court also reconsiders the sanctions award based on the entire record before the Court as of the issuance of this memorandum decision. Having evaluated the facts and circumstances of this case, and reviewed the arguments presented to the Court at that time, and after incorporating its analysis of the record through March 31, 2020 as stated above, this Court finds that no sanctions should be awarded to Creditors.

Creditors filed a supplemental brief on September 15, 2021. [Main Case Dk. 1154]. Debtor's Mother filed her opposition on September 22, 2021 [Main Case Dk. 1162], which raises many of the points previously addressed above. For the avoidance of doubt, this Court responds to and rules on these arguments below:[51]

---

[50] For the reasons more fully explained in the MOD, Debtor had no more than a mere expectancy interest in the **fully revocable** trust settled by her parents, which is not considered property or an asset of the estate under federal law. [Adv. Dk. 300].

[51] It is relevant to note that the following arguments were also made to the predecessor court in first instance. [Main Case Dk. 1162]. Again, there is no record from the predecessor court that indicates that these arguments were considered by the court.
a.    How the subject discovery sanctions were inappropriate under the two express exceptions set forth in FRCP 37 including that Debtor's Mother's positions were substantially justified;
b.    The award was unjust in light of the factual circumstances of the case – namely the frivolous complaint;

1.    <u>The Sanctions Award Contains No Findings as to Whether Debtor's Mother's Nondisclosure Was Substantially Justified, Thus Making It Unjust to Award Sanctions.</u>

**This Court's analysis herein has now remedied this issue (i.e., that no findings exist).** For the reasons already stated above, this Court concludes that Debtor's Mother's nondisclosure, her objections, and her counsel's instructions not to answer were substantially justified,[52] and an award of sanctions would be unjust.

2.    <u>The $62,172.86 Sanctions for a Single Motion to Compel are Unjust as Being Outside the Realm of "Reasonable Expenses" Authorized by FRCP.</u>

**This Court agrees. The record does not reflect that any sanctions are "reasonably" warranted under the circumstances.**

For the foregoing reasons, this Court concludes that on the record before it now, there is sufficient evidence to demonstrate that Debtor's Mother's failure to provide responses at the September 3, 2019, Rule 2004 examination was substantially justified and there is sufficient evidence to demonstrate that the circumstances of awarding sanctions would be unjust. Additionally, Debtor's Mother was not without adequate excuse for her non-compliance. Accordingly, the Court may not award sanctions pursuant to FRCP 45, or FRCP 37 (if it is even deemed appropriate to do so pursuant to FRCP 37 against a non-party).

---

c.    The amount awarded ($62,172.86 on a single motion to compel) was not "reasonable" as required by Rule 37.

[52] Creditors cite to *Jones v. Clinton*, 57 F. Supp. 2d 719, 732 n. 4 (E.D. Ark. 1999) for the proposition that awarding sanctions against a defendant under Rule 37 based on deposition misconduct by the defendant was appropriate notwithstanding the subsequent dismissal of the action against the defendant. The Court notes that this case is distinguishable from *Jones*. In *Jones*, the defendant violated the court's discovery orders by willfully giving false, misleading, and evasive answers designed to obstruct the judicial process. *Id.* at 720. In contrast, Debtor's Mother, based on her counsel's advice, refused to answer certain questions based on established privileges and confusion regarding the scope of the examination (for which no order had been entered). Moreover, when specifically ordered by the predecessor court to provide documents under seal, she did so. Such behavior certainly cannot be equated with the false and misleading answers provided by the defendant in *Jones*.

### E. Movant's Contention that this Court is Bound by the District Court's "Findings"

Creditors argue that the issue of whether Debtor's Mother was substantially justified is not an issue that can be re-evaluated by this Court because (1) the District Court initially found that the predecessor judge did not abuse her discretion in concluding that Debtor's Mother's refusal to answer questions was unjustified, [Main Case Dk. 1077], and (2) that the second District Court order states that "[t]he Court's prior Order therefore stands." [Main Case Dk. 1132]. This Court disagrees.

The second District Court order states:

> At bottom, the bankruptcy court abused its discretion when it awarded attorney's fees without *any* explanation for why it awarded the amount it did. The Court's prior Order therefore stands. And, in light of the case's current posture, the Court **VACATES** the entire award and **REMANDS** to the bankruptcy court to consider whether or not sanctions are still appropriate, and if so, what the proper amount of that award should be.

[Main Case Dk. 1132, Pg. 3 of 4] (emphasis in original).

Given that the motion before the District Court at the time it rendered its second order was a motion for rehearing, it logically follows that the District Court would reference that the vacation and remand from its prior Court Order "stands" – in fact, the District Court reached the very same conclusion in both orders: vacate and remand. To say that an order "stands" does not automatically attribute to it the meaning that "all aspects of the prior order are valid and binding on the lower court" as Creditors suggest.

Further, given the specific directive to consider whether or not sanctions are still appropriate "in light of the case's current posture," it follows that the vacation and remand was intended to be full and all encompassing, and did not confine this Court to any initial ruling by the District Court. No other interpretation would make sense as the two orders would be contradictory to one another. This is underscored by the fact that the second District Court order expressly references the "comprehensive review of the case's facts" from the prior order, as noted in Section II, Factual Background, [Main

Case Dk. 1132], but in no other section references the inclusion or reliance of any findings or other discussion contained in the first order.

However, even if the District Court's findings regarding the first order are binding on this Court, sanctions are still inappropriate. The District Court's first order addressed only two of the multiple arguments that were raised to the predecessor judge in the first instance (i.e., lack of notice and privacy),[53] and which should have been considered when she conducted her analysis of substantial justification. The remaining arguments (i.e., no entered order, reliance on established estate and trust law, lack of relevance, etc.) are persuasive, and are sufficient for this Court, in its discretion, to conclude that a substantial justification for Debtor's Mother's non-responsiveness existed at the time of the September 3, 2019, Rule 2004 examination.

Moreover, even if this Court wholly sets aside the issue of substantial justification, the remaining findings rendered herein, particularly regarding the undue confusion and complexity caused by procedural nonconformities leading up to Debtor's Mother's examination, demonstrate to this Court that it would be unjust to award sanctions. Substantial justification and other circumstances making an award of expenses unjust are two separate grounds for non-payment under FRCP 37(a)(5)(A), and only the issue of "substantial justification" appears to have previously discussed by the District Court.

Lastly, it is not clear to this Court that an analysis of FRCP 37 was even appropriate under the circumstances, in light of the holdings of the *Stipp* court that FRCP 45 sanctions are the only type of sanction available against non-parties. This Court appears to be the first court to issue findings related to whether Debtor's Mother had "adequate excuse" for her complained of non-compliance, and has determined, for the reasons fully stated above, that Debtor's Mother did in fact present sufficient evidence of adequate excuse.

---

[53] Further, as to the issue of privacy, the District Court noted that "[it] may have concluded differently [than the predecessor judge] whether the privacy concerns substantially justified her refusal to answer questions." [Main Case Dk. 1077]. Like the District Court, this Court has concluded differently.

Therefore, for all of the foregoing reasons, the awarding of sanctions in this matter is inappropriate.

### F.    Return of Paid Sanctions

Debtor's Mother, in compliance with the Sanctions Award, paid the amount of $62,172.86 over to Creditors. Upon the Reversal and Remand of the Sanctions Award, first on March 26, 2021 [USDC Case no. 8:20-cv-02272-RGK, Dk. No. 15; Bk Dk. No.1077] ("The Court VACATES and REMANDS the bankruptcy court's award of attorney fees") and again on June 2, 2021, where the District Court amplified its vacation of the entire award [USDC Case no. 8:20-cv-02272-RGK, Dk. No. 16; Bk. Dk. 1132], those funds should have been immediately transferred back to Debtor's Mother. This Court ordered the return of those funds pursuant to an order entered September 28, 2021. [Main Case Dk. 1165]. Pursuant to Declaration filed September 30, 2021 [Main Case Dk. 1169], it appears that a return of those funds has been initiated and completed by Creditors.

**IT IS SO ORDERED.**

Date: October 13, 2021

Scott C. Clarkson
United States Bankruptcy Judge